**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| JOSEPH PERKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:22-cv-01307-AGF |
| | ) |
| WILLIE JORDAN, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of plaintiff Joseph Perkins for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 3). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $16.80. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss plaintiff's complaint without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of his motion for leave to proceed in forma pauperis, plaintiff has submitted an inmate account statement. (Docket No. 4). The statement shows an average monthly deposit of $84.00. The Court will therefore assess an initial partial filing fee of $16.80, which is 20 percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should

2

construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who is currently a pretrial detainee at the St. Louis City Justice Center in St. Louis, Missouri. He brings this civil action pursuant to 42 U.S.C. § 1983, naming Correctional Officers Willie Jordan and Unknown Simms as defendants. (Docket No. 1 at 2-3). Both Officer Jordan and Officer Simms are sued in their official capacities only. The complaint contains allegations that defendants failed to protect plaintiff from an assault by another inmate.

In the "Statement of Claim," plaintiff asserts that on November 8, 2022, at around midnight, he was in the hallway of the St. Louis City Justice Center putting away cleaning supplies. (Docket No. 1 at 5). On the way back to the protective custody unit, an inmate "jumped [him] from behind [and] busted [his] nose." According to plaintiff, this inmate "had his door binked," allowing him to get out. After suffering the "busted nose," plaintiff was taken to medical, where he was treated. Plaintiff alleges that defendants "failed to make sure [he] was safe by not making sure the

3

inmate door was locked." He further states that "all three sliders were open when they should have been locked."

Attached to the complaint are two exhibits: an informal resolution request (IRR) written by plaintiff, and a St. Louis City Division of Corrections disciplinary report. (Docket No. 1 at 8-10). The Court has reviewed these exhibits and will treat them as part of the pleadings.[1]

In the IRR, plaintiff states that he was working the third shift as a "night scrub" on November 8, 2022. (Docket No. 1 at 8). On that date, an "inmate from 5B1 binked his cell door" and exited his cell. This inmate then went through the "unit slider," which was open, and "assaulted" plaintiff. This assault apparently came as a surprise, as plaintiff states that he had always worked third shift without any problems with other inmates or staff workers. Plaintiff notes that Officers Simms and Jordan were working third shift when he was attacked, and claims that they jeopardized his safety by "not checking cell doors or having [the] 5B1 and 2 slider closed."

In the incident report, Officer Jordan reported being in "the bubble" at the time of the assault. (Docket No. 1 at 9). According to Jordan, an inmate "physically attack[ed]" plaintiff, whereupon Officer Simms "quickly ran down to the physical altercation and gave [a] directive to the fighters to stop fighting." Both inmates complied. Plaintiff was later taken to medical to be treated by a nurse. Following this incident, Officer Simms checked the cell door of the perpetrator, and "discovered two batteries in the cell door line," which kept it from closing properly. Per the incident report, the door had not been "properly secured from the shift before." (Docket No. 1 at 10).

---

[1] *See also Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (stating that "while ordinarily, only the facts alleged in the complaint are considered in determining whether it states a claim, materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint"); and *Pratt v. Corrections Corp. of America*, 124 Fed. Appx. 465, 466 (8th Cir. 2005) (explaining that "the district court was required to consider the allegations not only in [plaintiff's] pro se complaint, but also in his motion to amend, his response to defendants' motion to dismiss, and the attachments to those pleadings").

Due to this assault, plaintiff states that he received a "busted nose," and seeks help settling his "lawsuit the right way," so that he can "get the right settlement." (Docket No. 1 at 5-6).

## Discussion

Plaintiff is a pretrial detainee who brings this civil action pursuant to 42 U.S.C. § 1983, alleging that two correctional officers in the St. Louis City Justice Center failed to protect him from an assault by another inmate. Because he is proceeding in forma pauperis, the Court has reviewed his complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss this action without prejudice.

### A. Official Capacity Claims

Officer Jordan and Officer Simms are sued in their official capacities only. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

In this case, both defendants are alleged to be employed by the St. Louis City Justice Center. As such, the official capacity claims against them are treated as being made against the City of St. Louis itself, their employer.

A local governing body such as the City of St. Louis can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). To prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of the City of St. Louis.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017). As with an unconstitutional custom, a "failure to train or supervise must be the moving force behind the constitutional violation." *See Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184, 1189 (8th Cir. 2019).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an

unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). Here, plaintiff has failed to provide any facts to support the proposition that he was harmed by an unconstitutional policy, custom, or failure to train on the part of the City of St. Louis.

First, regarding policy, plaintiff has not suggested that any policy statement, ordinance, regulation, or official municipal decision is at issue in this case. Certainly, he does not allege that defendants' purported failure to protect resulted from "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." That is, he presents no facts indicating that a City of St. Louis official made a deliberate decision to have Officer Jordan and Officer Simms fail to check cell doors during their shift. Rather than demonstrating that St. Louis has a policy of allowing cell doors to go unchecked, plaintiff's facts focus on the individual actions – or failure to act – on the part of Officers Jordan and Simms. This is insufficient to show an unconstitutional policy.

Second, as to custom, plaintiff has not established the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" City of St. Louis employees, much less that city policymaking officials were deliberately indifferent to or tacitly authorized such misconduct. To the contrary, instead of describing a pattern, plaintiff focuses on a single assault occurring on November 8, 2022. One occurrence does not amount to a pattern. *See Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991) (explaining that a court cannot infer the existence of an unconstitutional policy or custom from a single occurrence). Thus, plaintiff has not shown an unconstitutional custom.

Third, and relatedly, plaintiff has not presented any facts indicating that the City of St. Louis was deliberately indifferent in training or supervising their employees. Deliberate

8

indifference is shown by evidence that a municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." This is typically done through allegations that there has been a "pattern of similar constitutional violations by untrained employees." As previously noted, plaintiff does not propose a pattern of constitutional violations, but focuses instead on the actions of two individuals during a single shift. This is insufficient to demonstrate deliberate indifference.

Finally, to the extent that plaintiff seeks to hold the City of St. Louis responsible for the actions of its employees, the Court notes that a municipality cannot be held liable merely because it employs a tortfeasor. *See A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under [42 U.S.C.] § 1983, a municipality…cannot be liable on a respondeat superior theory"). *See also Andrews v. Fowler*, 93 F.3d 1069, 1074 (8th Cir. 1996) ("A local government may not be sued under [42 U.S.C.] § 1983 for an injury inflicted solely by its employees or agents on a theory of respondeat superior").

For all of these reasons, plaintiff has not stated a claim against the City of St. Louis. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights). Therefore, plaintiff's official capacity claims – which are directed against the city itself – must be dismissed.

### B. Individual Capacity Claims

In his complaint, plaintiff has checked the boxes indicating that he is suing Officer Jordan and Officer Simms in their official capacities only. As discussed above, he has failed to state an official capacity claim. Nonetheless, even if he intended to sue defendants in their individual capacities, the claims would still be subject to dismissal.

Plaintiff is a pretrial detainee claiming that Officers Jordan and Simms failed to protect him from an assault by another inmate. "The Eighth Amendment does not apply to pretrial detainees, but the Due Process Clause of the Fourteenth Amendment imposes analogous duties on jailers to care for detainees." *Christian v. Wagner*, 623 F.3d 608, 613 (8th Cir. 2010). Under the Due Process Clause, custodians of a pretrial detainee have a duty to take reasonable steps to protect the detainee from assault by other detainees. *Schoelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010). "A jail official violates the Due Process Clause…when he is deliberately indifferent to a substantial risk of serious harm to a pre-trial detainee and fails to protect the detainee." *Glaze v. Byrd*, 721 F.3d 528, 531 (8th Cir. 2013).

Here, plaintiff states only that Officers Jordan and Simms "failed to make sure [he] was safe" by ensuring the assaulting inmate's cell was locked, and that "all three sliders" were closed. This brief statement does not demonstrate that either defendant was deliberately indifferent. For example, plaintiff does not allege that defendants knew of any threats against him, let alone ignored such threats; that defendants knew the cell door had been jammed open; or that defendants somehow condoned or even encouraged plaintiff's assailant. To the contrary, the incident report – which plaintiff has attached as an exhibit – asserts that Officer Simms reacted immediately to break up the assault, and that the attacking inmate's cell door had been improperly secured during the prior shift. In short, plaintiff has not presented any facts to support the proposition that defendants knew of and disregarded a substantial risk of harm.

The Court is required to accept plaintiff's factual allegations as true, and to construe his complaint in a liberal manner. After doing so, however, the Court has determined that – at most – plaintiff has stated a negligence claim. That is to say, plaintiff does not accuse defendants of intentionally failing to protect him by deliberately leaving a cell door open, or by disregarding a

10

threat to his safety. Instead, he contends that they failed to check the appropriate doors while on duty to ensure they were locked. The Supreme Court has stated that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2472 (2015). Accordingly, "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). Thus, plaintiff has failed to demonstrate the requisite constitutional violation necessary for a 42 U.S.C. § 1983 claim.

For all these reasons, even if plaintiff had sued Officer Jordan and Officer Simms in their individual capacities, the claims against them would be subject to dismissal.

### C. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 2). The motion will be denied as moot as this case is being dismissed without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 3) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $16.80 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 2) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this order of dismissal would not be taken in good faith.

Dated this 17th day of March, 2023.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE